JOHN LUKOWSKI ET AL., APPELLEES, V. LOUIS DELESKI ET AL., APPELLANTS, IMPLEADED WITH THOMAS W. DELESKI ET AL., APPELLEES.

212 N. W. 2d 577

Filed November 30, 1973. No. 38971.

Haessler, Sullivan & Inbody, for appellants.

Collins & Collins and James T. Gleason, for appellees Lukowski.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

The District Court found for plaintiffs and impressed a constructive trust on record title of defendants to a farm. Defendants Louis and Tekla Deleski appeal. The issue is the existence of the oral agreement claimed by plaintiffs.

Tom Lukowski, now deceased, purchased the farm in 1944. In 1945 defendants, Louis Deleski and his wife, Tekla, daughter of Tom, moved on to the land to live and farm, remaining there until 1953. Tom and Louis had agreed that Tom would receive a landlord's share of the crops during the life of Tom. In 1953 Tom gained possession of the farm in accordance with a judgment for him in a suit against Louis.

Prior to 1953 Tom and Louis had been very close friends, and Louis had handled Tom's financial transactions. Louis denied the financial relationship, even knowledge of Tom's financial condition, at the time of the purchase, although he conceded the close friendship.

Tom had purchased the farm in 1944 for $24,500 at the request of Louis. The price was paid by $2,500 belonging to Tom, $7,000 which represented the proceeds of a mortgage loan from an insurance company to Tom, and a check drawn by Louis in the sum of $15,000. Louis delivered the check to Tom with a blank space for the name of the payee, someone other than

Louis filling in the space with the name of Tom. Louis did not attend the closing and did not know to whom the seller deeded the farm. According to him, his conversation with Tom prior to the purchase had been as follows: ". . . (H)e said if I wanted to buy the farm he would finish paying it out . . . ." Louis was unconcerned that Tom took title, for the latter promised to convey the farm to Louis subsequently.

In 1946 Tom conveyed the farm to Louis and Tekla in joint tenancy subject to a life estate in Tom. According to Tekla, the deed was unsolicited and the delivery was accompanied by this remark by Tom: "I have done what I told you I would do." On at least one subsequent occasion Tom said he had requested Louis to reconvey the farm to him.

Louis asserted that at no time had he borrowed money from Tom. Judge Howard Kanouff, a District Judge now, but counsel for Tom in the suit in 1953, testified: ". . . (Louis) testified (in 1953) that he had money of Tom Lukowski's for five or six years that came from some land owned by . . . (Tom) and sold . . . to a Henry Biel." The testimony referred to a transaction prior but close to the purchase of the farm in question.

Other impeachment consisted of a savings account book kept by the wife of plaintiff Leo for Tom. It shows a withdrawal of $500 in July 1945 with the red ink notation "Louie Borrowed." She delivered Louis the money in Tom's presence and knew that it represented a loan.

At family gatherings Tom frequently stated that at his death the farm was to be divided equally among the children. In 1953 he testified to such a division of the interest.

In June 1949 Tom executed an affidavit in connection with an application of Louis to a third party for a loan. He affirmed that the 1946 conveyance, subject to a mortgage and to a life estate retained by him, was in fact an absolute gift to Louis and Tekla.

In January 1969 a petition of Leo for letters of administration in his deceased father's estate alleged that Tom possessed no real estate. In September an amended inventory signed by Leo and filed in the estate proceeding set out a life estate of Tom in the farm and the remainder interest in Louis.

Louis admitted that in July 1970 he answered an inquiry by Leo about the farm by saying what Leo had testified to as follows: ". . . (H)e (Louis) told me (Leo) he didn't intend to do anything about the farm. I said, 'What do you mean? You know that farm don't belong to you.' He told me . . . 'I worked 25 years for that farm. . . . In fact you kids wasn't supposed to get any of that cash money that was left. . . . I knew about that farmland, I tried to get your dad to sign it over to one of you boys and he wouldn't do it. . . . I am not getting a pension like you and brother Frank. . . . I have to look after myself.' "

Some testimony has been pretermitted, but it is not important to our conclusion.

Where the owner of an interest in land transferred it inter vivos to another in trust for a third person, but no memorandum properly evidencing the intention to create a trust was signed and the transferee refused to perform the trust, the transferee holds the interest upon a constructive trust for the third person if the transferee at the time of the transfer was in a confidential relation to the transferor. The rule prevents unjust enrichment. See, Restatement, Trusts, § 45(1) (b), (1935); Restatement, Trusts 2d, § 45(1)(b), (1959), and generally, its Nebraska Annotations by Volkmer (1971); Foster, "Nebraska Trust Law and the Restatement of Trusts," 21 Neb. Law Rev. 144 (1942); Note, 20 Neb. Law Rev. 160 at 168 (1941).

A constructive trust must be proved by evidence that is clear and convincing. Zych v. Zych, 183 Neb. 708, 163 N. W. 2d 882 (1969).

Louis' testimony about the source of the $15,000 that

was applied toward the purchase price of the farm and about his financial transactions with Tom was impeached. The existence of a confidential relationship that extended to financial transactions is beyond reasonable dispute.

We allow for the opportunity of the trial court to observe the witnesses and conclude that the evidence is clear and convincing in support of the trust imposed by the District Court.

The judgment is affirmed.

AFFIRMED.